IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY and ALLSTATE INDEMNITY COMPANY, | CV 22-70-BLG-KLD |
| Plaintiffs, | ORDER |
| vs. | |
| MATTHEW FRANK. | |
| Defendant. | |

This declaratory judgment action comes before the Court on the parties'
cross-motions for summary judgment on the question of whether Plaintiffs Allstate
Vehicle and Property Insurance Company and Allstate Indemnity Company
(collectively "Allstate") have a duty to defend Defendant Matthew Frank ("Frank")
in an underlying state court action. The motions are fully briefed, and the Court
heard oral argument on August 7, 2023. For the reasons set forth below, Allstate's
motion for summary judgment is denied, and Frank's cross-motion for partial
summary judgment is granted.

## I.   **Background**

The underlying action against Frank arises out of an altercation that is alleged to have taken place on January 15, 2022, in the parking lot of the Grandstand Bar in Billings, Montana. [1] (Doc. 8-3). At all relevant times, Frank was employed as a police officer for the City of Billings. (Doc. 8-3 at ¶ 2). The plaintiff in the underlying action, Louis Delgado ("Delgado"), alleges that Frank and the other individual defendants "breached their duty of care when they intentionally physically assaulted [him] and used excessive force against [him]." (Doc. 8-3 at ¶ 26). Delgado claims that Frank and the other individual defendants spent more than an hour inside the bar drinking alcohol and then congregated outside in the parking lot. (Doc. 8-3 at ¶¶ 9, 11). Delgado alleges that as he was attempting to drive through the parking lot, Frank approached his vehicle "and did a flying knee into the driver's side door," causing physical damage to Delgado's vehicle. (Doc. 8-3 at ¶ 11-12). Delgado alleges that Frank and the others "aggressively approached the driver's side door," at which time Delgado "advised and showed" Frank and the others that "he had a firearm in the vehicle in an attempt to deescalate and get the three [d]efendants away from the vehicle so he could continue to leave." (Doc. 8-3

---

[1] The complaint in the underlying action also names Billings resident Steve Swanson; Yellowstone County Sheriff's Deputy Brandon Smart; the Yellowstone County Sheriff's Department; and the City of Billings Police Department as defendants. (Doc. 8-3 at 1-2). Because these defendants are not relevant to the pending motions, this section focuses on the factual allegations related to Frank.

at ¶¶ 12-13). Delgado asserts that Frank, in his capacity as a law enforcement officer, then "attempted to gain physical control over [him] in an attempt to apprehend him." (Doc 8-3 at ¶ 14). According to Delgado, Frank reached into his vehicle through the driver's side window and "viciously" and "brutally assaulted" him. (Doc. 8-3 at ¶¶ 15, 17). Delgado claims that Frank then opened the driver's side door and attempted to drag him out of his vehicle "to continue the physical assault" and apprehend him. (Doc. 8-3 at ¶ 18). Delgado alleges he was able to maneuver his vehicle away from Frank, however, and exited the parking lot. (Doc. 8-3 at ¶ 18).

On April 26, 2022, Delgado filed the underlying action against Frank in Montana's Thirteenth Judicial District Court, Yellowstone County. (Doc. 8-3). Delgado has named Frank individually and in his official capacity, and asserts claims against him for negligence and negligence per se. (Doc. 8-3 at 4-14). Delgado's negligence claim alleges that Frank owed Delgado a duty of care, and breached that duty "when he instigated an altercation by intentionally doing a flying knee into the driver's side door of [Delgado's] vehicle while the window was open" and by physically assaulting and using excessive force against Delgado. (Doc. 8-3 at ¶¶ 25-26). Delgado's negligence per se claim alleges that Frank violated Montana's official misconduct statute because he was acting as a law enforcement officer when he "intentionally brutally assaulted" Delgado, and

violated two Montana criminal statutes prohibiting unlawful restraint and criminal trespass to vehicles while acting in his official and individual capacity. (Doc. 8-3 at ¶¶ 59-68; 79-98). Delgado alleges that Frank's "actions or omissions constituted actual malice" and seeks compensatory and punitive damages. (Doc. 8-3 at ¶¶ 34, 68, 88, 98, and p. 14).

Frank disputes Delgado's version of events. (Doc. 35). On August 24, 2022, Frank filed an Amended Answer to the underlying Complaint in which he raised "self-defense" as an affirmative defense. (Doc. 10-3 at 5). At the time of the events alleged in Delgado's Complaint, Frank was insured under two Allstate insurance policies – a homeowners insurance policy ("the Homeowners Policy") and a personal umbrella policy ("the Umbrella Policy") (collectively "the Policies"). (Doc. 33 at ¶¶ 9-10). On or about April 28, 2022, Frank notified Allstate of the underlying action. (Doc. 39 at ¶ 10). Allstate subsequently advised Frank of its position that the claims asserted against him in Delgado's Complaint are not covered under the Policies. (Doc. 33 at ¶ 13).

Allstate filed this declaratory judgment action on July 7, 2022. (Doc. 1). As set forth in the Second Amended Complaint, Allstate seeks a declaratory judgment that it has no obligation to defend or indemnify Frank in the underlying lawsuit. (Doc. 8). On September 14, 2022, Frank filed his Answer to the Second Amended Complaint and Counterclaim, again asserting self-defense as an affirmative

4

defense. (Doc. 10). Frank's Counterclaim notified Allstate that he has also alleged self-defense as an affirmative defense in the underlying action, and seeks a declaratory judgment that Allstate is required to defend and indemnify him in connection with Delgado's claims.  (Doc. 10 at 10, 13).

Allstate moves for summary judgment declaring that it has no duty to defend and indemnify Frank in the underlying action, and Frank cross-moves for partial summary judgment on the duty to defend.

## II.   Legal Standards

### A.    Summary Judgment

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. 317, 324 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials" of the pleadings. *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

When presented with cross-motions for summary judgment on the same matters, the court must "evaluate each motion separately, giving the non-moving party the benefit of all reasonable inferences." *American Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

**B.    Application of Montana Law**

Where, as here, a declaratory judgment action is in federal court based on diversity jurisdiction, the propriety of granting declaratory relief is a procedural matter to which federal law applies but the underlying substantive issues are

6

governed by state law. *Paul Evert's RV Country, Inc. v. Universal Underwriters Ins. Co.*, 2016 WL 3277175, *2 (E.D. Cal. June 14, 2016) (citing *Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 752 (9th Cir. 1996), overruled on other grounds by *Govt. Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998)). Thus, the Court applies Montana law to all substantive legal issues. See *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

### 1.   Insurance Policy Interpretation

It is well-settled in Montana that the interpretation of an insurance contract presents a question of law. *Scentry Biologicals, Inc. v. Mid-Continent Cas. Co.*, 319 P.3d 1260, 1264 (Mont. 2014). A court interpreting an insurance policy is to read the policy as a whole and, to the extent possible, reconcile the policy's various parts to give each meaning and effect. *Kilby Butte Colony, Inc v. State Farm Mut. Auto. Ins. Co.*, 403 P.3d 664, 668 (Mont. 2017). The court must interpret the terms of the "insurance policy according to their usual, common sense meaning as viewed from the perspective of a reasonable consumer of insurance products." *Allstate Ins. Co. v. Wagner-Ellsworth*, 188 P.3d 1042, 1046 (Mont. 2008) (quoting *Stutzman v. Safeco Ins. Co. of America*, 945 P.2d 32, 34 (Mont. 1997)). In doing so, the court "may not rewrite the contract at issue, but must enforce it as written if its language is clear and explicit." *Allstate Ins. Co.*, at 1046. If the terms of an

insurance policy are ambiguous, however, that ambiguity must be strictly construed against the insurer. *Stutzman*, 945 P.2d at 34. "An '[a]mbiguity exists only when the contract taken as a whole or in its wording or phraseology is reasonably subject to two different interpretations.'" *Farmers Alliance Mut. Ins. Co. v. Holeman*, 961 P.2d 114, 119 (Mont. 1998).

"The determination of whether insurance coverage exists is a two-step process." *United States Fire Ins. Co. v. Greater Missoula Family YMCA*, 454 F.Supp.3d 978, 981 (D. Mont. 2020) (citing *Travelers Cas. & Surety Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469, 476 (Mont. 2005)). First, the insured has the initial burden of establishing "that the claim falls within the basic scope of coverage." *Farmers Ins. Exch. v. Wessel*, 477 P.3d 1101, 1105 (Mont. 2020) (citing *Fire Ins. Exch. v. Weitzel*, 371 P.3d 457, 461(Mont. 2016)). See also *Ribi*, 108 P.3d at 476 (the insured bears the initial burden of proving "a loss stemming from an 'occurrence' of the type included in the general coverage provision"). "If the insured shows that the claim falls within the basic scope of coverage, then the burden shifts to the insurer to show that the claim is unequivocally excluded under an exception within the coverage." *Wessel*, 477 P.3d at 1105 (citing *Weitzel,* 371 P.3d at 461). "Because exclusions from coverage 'are contrary to the fundamental protective purpose of an insurance policy,' they must be 'narrowly and strictly

construed.'" *Greater Missoula Family YMCA*, 454 F.Supp.3d at 981 (quoting

*Newman v. Scottsdale Ins. Co.*, 301 P.3d 348, 355 (Mont. 2013)).

> 2.  Duty to Defend

Under Montana law, "[t]he duty to defend is independent from and broader

than the duty to indemnify created by the same insurance contract." *United*

*National Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 214 P.3d 1260, 1269 (Mont.

2008). The duty to defend "arises when an insured sets forth facts that represent a

risk covered by the terms of an insurance policy." *United National*, 214 P.3d at

1269. In other words, where the insured "alleges facts, which if proven, would

result in coverage," then the insurer has a duty to defend. *Plum Creek Marketing,*

*Inc. v. American Economy Ins. Co.*, 214 P.3d 1238, 1247 (Mont. 2009). In

determining whether the duty to defend has been triggered, the court must liberally

construe the allegations in the underlying complaint "so that all doubts about the

meaning of the allegations are resolved in favor of finding that the obligation to

defend was activated." *Farmers Union Mut. Ins. Co. v. Staples,* 90 P.3d 381, 385

(Mont. 2004).

While the duty to defend thus "arises where the alleged facts even

potentially fall within the scope of coverage, ... the duty to indemnify does not

arise unless the policy actually covers the alleged harm." *Skinner v. Allstate Ins.*

*Co.,* 127 P.3d 359, 363 (Mont. 2005) (quoting *Constitution Assocs. v. New*

*Hampshire Ins. Co.*, 930 P.2d 556, 562-63 (Colo. 1996)). "Where there is no duty to defend, it follows that there can be no duty to indemnify." *Skinner v. Allstate Ins. Co.,* 127 P.3d 359, 364 (Mont. 2005). Thus, a finding by the court "that there is no duty to defend necessarily compels the finding that there is no duty to indemnify." *Nat'l Surety Corp. v. Mack*, 2016 WL 590453, at *2 (D. Mont. Feb. 2016).

## III.   <u>Discussion</u>

Allstate argues it does not have a duty defend Frank in the underlying action because, based solely on the facts alleged in Delgado's complaint, there is no possibility of coverage under the Policies. Frank counters that if the facts alleged in the Delgado complaint are considered in conjunction with other factual information known to Allstate, there is a possibility of coverage under the Policies and Allstate is obligated to defend him in the underlying action.

### A.   **Homeowners Policy**

The Homeowners Policy provides Family Liability Coverage, in relevant part, as follows:

**Family Liability Protection – Coverage X**

**Losses We cover Under Coverage X:**
Subject to the terms and conditions and limitations of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

(Doc. 8-1 at 43). The Homeowners Policy defines an "occurrence" as "an accident, including continuous repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage.**" (Doc. 8-1 at 24-25).

The Homeowners Policy also lists several exclusions from Family Liability Coverage, including the following intentional acts exclusion:

> 1. **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
> a) such **insured person** lacks the mental capacity to govern his or her conduct;
> b) such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or
> c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

(Doc. 8-1 at 43). Also relevant here, the Homeowners Policy contains a business activities exclusion which states:

> 12. **We** do not cover **bodily injury** or **property damage** arising out of the past or present **business** activities of an **insured person.**

(Doc. 8-1 at 44). The Homeowners Policy defines "business" to mean, in relevant part, "any full- or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes." (Doc. 8-1 at 24).

Allstate argues it does not have a duty to defend because there is no possibility that the Homeowners Policy will cover any of the claims asserted

against Frank in the underlying action. Allstate takes the threshold position that the duty to defend inquiry is limited to the facts alleged in the underlying complaint. Because Delgado's claims are based entirely on allegations of intentional conduct by Frank, Allstate argues, the claims do not constitute an "occurrence" under the Homeowners Policy's general coverage provisions and are excluded from coverage by the intentional acts exclusion. To the extent the underlying complaint alleges that Frank engaged in official misconduct and was acting in an official capacity, Allstate argues Delgado's claims fall squarely within the Homeowners Policy's business activities exclusion.

Frank disagrees with Allstate's threshold position that the Court's inquiry is necessarily confined to the four corners of the underlying complaint. Frank contends that if the allegations in Delgado's complaint are read in conjunction with other facts known to Allstate  – including particularly that Frank has raised self-defense as an affirmative defense in the underlying action and the City of Billings has determined Frank was not acting within the scope of his duties as a police officer at the time of the incident – Delgado's claims potentially fall within the general coverage provisions of the Homeowners Policy and outside the intentional acts and business activities exclusions.

       1.    <u>Whether the Conduct Alleged in the Underlying Complaint
Constitutes an "occurrence"</u>

As indicated above, the Homeowners Policy defines "occurrence" as "an accident, including continuous repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage." (Doc. 8-1 at 24-25). Under Montana law, an "accident" is defined as an "unexpected happening that occurs without intention or design on the part of the insured." *Safeco Ins. Co. of America v. Liss*, 16 P.3d 399, 405 (Mont. 2000). The Montana Supreme Court has established a two-part test to determine whether conduct is an "accident," such that it constitutes an "occurrence" under an insurance policy definition like the one at issue here: "1) whether the act itself was intentional, and 2) if so, whether the consequence or resulting harm stemming from the act was intended or expected from the actor's standpoint." *Fisher Builders, Inc.*, 371 P.3d 375, 378 (Mont. 2016).

The second part of *Fisher Builders* test requires an objective inquiry to determine "what injuries could reasonably be expected to result from an intentional act." *Fisher Builders*, 371 P.3d at 379. If the answer to either question posed by the test is "no," then the act is an "occurrence." *Western Heritage Ins. Co. v. Slopeside Condo. Assoc., Inc.*, 371 F.Supp.3d 828, 832 (D. Mont. 2019) (citing *Fisher Builders*, 371 P.3d at 378).

Applying *Fisher Builders* here, Allstate contends the conduct alleged in the underlying complaint does not constitute an accident or occurrence. To begin with,

13

Allstate maintains that although Delgado's claims are titled "negligence" and "negligence per se," the supporting factual allegations plainly set forth only intentional conduct by Frank. As Allstate correctly points out, what matters in determining the potential for coverage under an insurance policy is the nature of the facts alleged in the underlying pleadings, not how the claims are labeled or titled. See e.g. *Beaverhead County v. Montana Ass'n of Counties Joint Powers Ins. Auth.*, 335 P.3d 721, 724 (Mont. 2014) ("We have held that the acts giving rise to the complaint, and not the complaint's legal theories or conclusory language, form the basis for coverage."); *State Farm and Casualty Co. v. Rodriguez*, 2021 WL 412268 at *4 n. 8 (D. Haw. Feb. 5, 2021) ("Although underlying Complaint alleges causes of action entitled 'negligence' and 'negligent infliction of emotional distress,' those labels do not trigger coverage without any *facts* indicating negligent acts."). This principle is well established, and Frank does not argue otherwise.

Frank does, however, disagree with Allstate's next argument that the duty to defend inquiry in this case is necessarily limited to the four corners of Delgado's complaint. As a general rule, whether an insurer has a duty to defend is determined "by comparing the factual allegations in the underlying complaint to the coverage afforded under the policy." *Employers Mut. Cas. Co. v. Hansen*, 2021 WL 961775, at *4 (D. Mont. March 15, 2021) (citing *Graber v. State Farm Fire & Cas. Co.* 797

14

P.2d 214, 217 (Mont. 1990)).  The Montana Supreme Court recently reaffirmed this principle in *Wessel*: "Whether a duty [to defend] exists is determined by looking to the allegations within the complaint; 'the complaint and the policy constitute the universe with regard to the insurers' duty to defend.' If there is no coverage under the terms of the policy based on the facts contained in the complaint, there is no duty to defend." *Wessel*, 477 P.3d at 1105 (quoting *Fire Ins. Exch. v. Weitzel*, 371 P.3d 457, 461 (Mont. 2016)).

Citing *Wessel*, Allstate argues it was not required to look beyond the allegations in Delgado's complaint to determine whether it had a duty to defend Frank in the underlying action. As detailed in the background section above, the complaint alleges that Frank did a flying knee kick to Delgado's car, used excessive force, brutally and viciously assaulted him, and acted with actual malice. Allstate argues these allegations do not constitute an occurrence under the *Fisher Builders* test because (1) the conduct alleged was clearly intentional, and (2) the consequences and resulting harm stemming from the conduct were reasonably expected from Frank's standpoint. Because the complaint does not allege facts that, if proven, could constitute an occurrence as required to fall within the scope of the Homeowners Policy's coverage provisions, Allstate contends, there can be no duty to defend.

15

Frank does not seem to dispute that, on its face, the Delgado complaint alleges intentional conduct that would not constitute a covered occurrence. But unlike Allstate, Frank takes the position that it is necessary and proper under the circumstances to consider extrinsic factual information in determining Allstate's duty to defend. Frank invokes *Revelation Industries, Inc. v. State Paul Fire & Marine Ins. Co.*, 206 P.3d 919 (Mont. 2009), which held that even when the underlying "complaint does *not* present a claim which on its face is covered by the policy," an insurer may have a duty to defend if it is aware of factual information that would otherwise trigger such a duty. *Revelation Industries*, 206 P.3d at 926 (italics in original). *Revelation Industries* made clear that "[a]n insurer cannot ignore knowledge of facts that may give rise to coverage under the policy simply because the complaint – which is, after all, drafted by a claimant over whose draftsmanship the insured has no control – does not allege those facts of which the insurer has knowledge." *Revelation Industries*, 206 P.3d at 928. While insurers are not required "to seek out such information," they are not at liberty "to simply ignore factual information supplied to them by their insured but not alleged in the complaint or petition where those facts would trigger a duty to defend." *Revelation Industries*, 206 P.3d at 926.

The Montana Supreme Court recently reaffirmed these principles in *National Indemnity Co. v. State*, 499 P.3d 516, 528 (Mont. 2021). The Court

reiterated that under Montana law "an insurer's duty to defend may arise from an insurer's knowledge of '*facts obtained from outside the complaint,*'" and thus, the duty is not exclusively dependent upon notice of facts from the insured." *National Indemnity*, 499 P.3d at 528 (italics in original) (quoting *Huckins v. United Servs. Auto. Ass'n.*, 396 P.3d 121, 124 (Mont. 2017) (citing *Revelation Industries*, 206 P.3d 928)).

Applying these principles here, Frank argues Allstate was not entitled to ignore his affirmative defense of self-defense when evaluating its duty to defend.[2] The Court agrees. It is undisputed that Frank asserted self-defense as an affirmative defense in the amended answer he filed in the underlying action on August 24, 2022 – just three months after he was served with Delgado's complaint and approximately six weeks after Allstate filed this declaratory judgment action. (Doc. 10-1). At oral argument, Allstate explained that it is defending Frank in the underlying action subject to reservation of rights, and acknowledged it was put on notice that Frank is claiming self-defense when defense counsel filed the amended answer on August 24, 2022. Because Allstate knew Frank was asserting self-

---

[2] Frank also argues Allstate should have considered a City of Billings letter stating that he was acting outside the course and scope of his employment at the time of the altercation. This argument relates to the business activities exclusion, which is addressed separately below.

defense as an affirmative defense against Delgado's claims, it was not at liberty to ignore that information when evaluating its duty to defend.

Allstate cites *Abbey v. Chubb Corp.*, 2006 WL 8449569 (D. Mont. July 20, 2006) for proposition that an insurer is not required to consider later developed facts outside the original complaint when evaluating coverage. (Doc. 26 at 21, citing *Abbey*, 2006 WL 8449569 at *6). But the fact that Allstate was put on notice of Frank's affirmative defense at the pleading stage in the underlying action distinguishes this matter from *Abbey.* In *Abbey*, the later developed facts came from an affidavit filed in support of a motion for summary judgment, two depositions, and a letter written nearly a year after the underlying complaint was filed. *Abbey*, 2006 WL 8449569, at *6. The court confined the coverage inquiry to the facts alleged in the underlying complaint, reasoning that if an insurer was "required to consider facts introduced much later by the party seeking coverage that were not in the original complaint, an insurer could never deny a duty to defend." *Abbey*, 2006 WL 8449569, at *6.  Unlike the extrinsic evidence at issue in *Abbey*, Frank's affirmative defense was first introduced at the pleading stage in the underlying action. Under *Revelation Industries*, which post-dates *Abbey*, Allstate could not ignore the fact that Frank was claiming self-defense – a fact it has been aware of since the early stages of the underlying action.

Allstate additionally asserts that the rule established in *Revelation Industries* applies only if the facts of which the insurer has knowledge are undisputed. Allstate argues that unlike *Revelation Industries*, where the facts known to the insurer but not alleged in the complaint were undisputed, Frank disputes Delgado's version of events. (Doc. 40 at 12). While the issue of whether Frank acted in self-defense is certainly disputed, the fact that he has asserted self-defense as an affirmative defense is not in dispute. Allstate has been aware since Frank filed his amended answer to Delgado's complaint in August 2022 that Frank is asserting self-defense as an affirmative defense. As explained below, it is the assertion of this affirmative defense that raises the possibility of coverage and triggers the duty to defend. Under *Revelation Industries*, Allstate was not entitled to ignore this factual information when evaluating its duty to defend.

Allstate further contends Frank's reliance on *Revelation Industries* is foreclosed by *Wessel*. In *Wessel*, the plaintiffs in the underlying action were involved in an ongoing dispute with the insureds over the plaintiffs' right to use a road traversing the insureds' property to access their properties. *Wessel*, 477 P.3d at 1103. The plaintiffs alleged the insureds threatened to harm them if they continued to use the road, installed physical obstacles to prevent them from accessing their properties, retaliated against them for denying the insureds access to recreate on their properties, and intimidated them by discharging firearms at

them. *Wessel*, 477 P.3d at 1103, 1105-06. The plaintiffs brought claims against the insureds for assault, trespass, civil conspiracy, and intentional infliction of emotional distress. The plaintiffs further alleged the insureds acted intentionally, purposefully and with malice. *Wessel*, 477 P.3d at 1104.

The Supreme Court held the conduct alleged did not constitute an "occurrence" or "accident" under the insureds' homeowners policy because the "the conduct alleged was both intentional and done purposefully by the Insured to cause injury and damages" to the plaintiffs. *Wessel*, 477 P.3d at 1106. In finding no duty to defend, the Supreme Court reasoned that "[a]lthough an insurer cannot ignore knowledge of facts that may give rise to coverage under the policy simply because the complaint does not allege these facts of which the insurer has knowledge, this exception does not apply due to the very nature of the claims." *Wessel*, 477 P.3d at 1106 (quotes, punctuation and cite omitted). Although the insureds "suggest[ed] that their denials to the allegations create[d] factual disputes," the Supreme Court explained that under Montana law, "the threshold question is whether the claim against the insured alleges facts that would trigger coverage," and the insureds could not "create coverage where it does not exist simply by denying the claims when the claims themselves do not trigger coverage." *Wessel*, 477 P.3d at 1106.

Analogizing to *Wessel*, Allstate argues that because the conduct alleged in the underlying complaint was intentional and purposeful, the duty to defend inquiry ends there and Frank cannot create the possibility of coverage by claiming he acted in self-defense. But unlike the insureds in *Wessel*, who simply denied the factual allegations in the complaint, Frank asserted self-defense as an affirmative defense in his responsive pleading to Delgado's complaint. While the mere denial of liability by an insured in the underlying action may not fall within the exception created by *Revelation Industries*, the fact that Frank has asserted a colorable claim of self-defense distinguishes this case from *Wessel*.

This distinction is material, as evidenced by the primary case out of this district that Frank relies on to support his argument that the claims asserted in the underlying complaint are a covered occurrence, *Safeco Ins. Co. of America v. Tunkle*, 997 F.Supp. 1356 (D. Mont. 1998). In *Tunkle*, the defendant was insured under a homeowner's policy that defined an "occurrence" as "an accident … which results in bodily injury." *Tunkle*, 997 F.Supp. at 1357. The policy also contained an intentional acts exclusion precluding coverage for bodily injury "which is expected or intended by any 'insured' or which is the foreseeable result of an act or omission intended by any 'insured'." *Tunkle*, 997 F.Supp. at 1357. The insured was prosecuted criminally after shooting a home intruder, but was acquitted based on self-defense. *Tunkle*, 997 F.Supp. at 1357. The intruder then sued the insured in

21

state court for damages suffered in the shooting, and the insurer brought suit in federal court seeking a declaration that it did not have a duty to defend and indemnify its insured. *Tunkle*, 997 F.Supp. at 1357. The insurer argued there was no coverage because the shooting was not an "occurrence," and the policy's intentional act exclusion applied. *Tunkle*, 997 F.Supp. at 1358.

The court rejected both arguments, holding that "[t]he duty to defend arises where an insured has a colorable claim of self-defense." *Tunkle*, 997 F.Supp. at 1360. First, the court found the definition of "occurrence" was ambiguous because the policy did not define "accident." *Tunkle*, 997 F.Supp. at 1357. Construing the ambiguity against the insurer, the court concluded the shooting "was an 'accident' as that term is reflected in the generally understood dictionary definitions," and thus was an "occurrence" under the policy.[3] *Tunkle*, 997 F.Supp. at 1357-58. Second, the court concluded the intentional acts exclusion did not apply,

---

[3] Frank argues the Homeowners Policy suffers from the same ambiguity because it similarly defines "occurrence" as an "accident" that results in bodily injury. But based on two subsequent developments in Montana law, the Court cannot reach the same conclusion here. First, the Montana Supreme Court has since provided a common law definition of "accident." *Liss*, 16 P.3d at 405. Second, in *Fisher Builders* the Montana Supreme Court provided an instructive, two-part test for determining whether conduct is accidental and therefore an "occurrence" under policy definitions like the one at issue here. Given these developments, the Court applies the *Fisher Builders* test to determine whether the conduct alleged in the underlying complaint constitutes an occurrence as defined in the Homeowners Policy.

reasoning that "self-defense is the very opposite of willful wrongdoing." *Tunkle,* 997 F.Supp. at 1360. "By definition, the intent of a person acting in self-defense is to protect himself," not to cause harm to another. *Tunkle*, 997 F.Supp. at 1360. Thus, the court reasoned, "[s]elf-defense is volitional but not intentional within the policy exclusions." *Tunkle*, 997 F.Supp. at 1360.

Here, as in *Tunkle,* Frank has asserted a colorable claim of self-defense, thereby distinguishing this case from *Wessel.* As explained above, Allstate has been on notice since August 24, 2022, when Frank filed his amended answer to the underlying complaint, that Frank is claiming he acted in self-defense. (Doc. 10-1 at 5). That Frank's affirmative defense is colorable is evident from the face of the underlying complaint. Under Delgado's version of events, he demonstrated to Frank during their encounter that he had a firearm in the vehicle. (Doc. 8-3 at ¶ 13). Delgado's allegation that he demonstrated to Frank during their encounter that he had a firearm in the vehicle is sufficient to raise a colorable claim of self-defense.

The Court also notes that, contrary to the allegations in the underlying complaint, Frank has provided a supporting affidavit stating that he did not provoke Delgado to yell obscenities, and did not provoke Delgado to stop and point a gun at him. (Doc. 35 at ¶ 3). Frank explains that when Delgado pointed a gun at him, he became fearful for his own life and the lives of his friends, at which

point he attempted to disarm Delgado. (Doc. 35 at ¶ 4). This affidavit certainly bolster's Frank's claim that he was acting in self-defense on the night in question. But even without the affidavit, and considering only the allegations in the underlying complaint, Frank has raised a colorable claim of self-defense.

Applying the reasoning in *Tunkle,* reading the allegations in the underlying complaint in conjunction with Frank's claim of self-defense, and using the two-part test established in *Fisher Builders*, the Court concludes the conduct alleged in the underlying action may qualify as "accident" and thereby constitute an "occurrence" under the Homeowners Policy. The first part of the *Fisher Builders* test asks whether the alleged conduct was clearly intentional. *Fisher Builders*, 371 P.3d at 378. As addressed above, notwithstanding the way the underlying claims are titled, the supporting factual allegations in Delgado's complaint describe intentional conduct by Frank. But when the factual allegations are considered in conjunction with Frank's claim that he was acting in self-defense, it is not clear that the conduct alleged was intentional. As recognized in *Tunkle*, self-defense is the opposite of willful wrongdoing, and while it is volitional conduct, it is not intentional. *Tunkle,* 997 F.Supp. at 1360.

Although it is not necessary to do so, the Court also considers the second part of the *Fisher Builders* test, which asks whether the consequences and harm stemming from the conduct were reasonably expected from the standpoint of the

insured. Consistent with the reasoning in *Tunkle*, a number of courts from other jurisdictions have concluded that an injury resulting from conduct by an insured acting in self-defense is not, as a matter of law, expected or intended from the standpoint of the insured.

In *Vermont Mut. Ins. Co. v. Walukiewicz*, 966 A.2d 672, 678-79 (Conn. 2009), for example, the Connecticut Supreme Court considered whether bodily injuries inflicted by an insured acting in self-defense were "expected or intended" within the meaning of an intentional acts exclusion that did not contain a self-defense exception. As in *Tunkle*, the Court reasoned that "[w]hen a person legitimately acts in self-defense, his primary intent it not to cause injury to another, but to prevent harm to himself." *Walukiewicz*, 966 A.2d at 682. The Court agreed with *Tunkle* that the intent of a person acting in self-defense is, by definition, to protect himself. *Walukiewicz*, 966 A.2d at 682 (citing *Tunkle*, 997 F.Supp. at 1360). Accordingly, the Court concluded "that the intentional injury exclusion does not preclude coverage for injuries resulting from legitimate acts of self-defense because those injuries were not expected or intended by the insured." *Walukiewicz*, 966 A.2d at 682.

Similarly, in *State Farm Fire & Cas. Co. v. Poomaihealani*, 667 F.Supp. 705, 706 (D. Haw. 1987), the defendant intentionally struck his neighbor but claimed he did so in self-defense, and was insured at the time under a homeowners

policy that excluded "bodily injury or property damage which is expected or intended by the insured." The district court found that actions taken in self-defense were not excluded from coverage, reasoning that the rationale for the exclusion – to prevent "individuals from purchasing insurance as a shield for their *anticipated intentional misconduct*" – did not apply to cases of self-defense. *Poomaihealiani*, 667 F.Supp. at 709 (italics in original). Having determined that an act of self-defense "is neither anticipated nor wrongful from the standpoint of the insured," the court found the insurer had a duty to defend the insured because there was a genuine issue of material fact as to whether his actions were in self-defense. *Poomaihealiani*, 667 F.Supp. at 708, 709. See also *Stoebner v. South Dakota Farm Bureau Mut. Ins. Co.*, 598 N.W.2d 557, 559-60 (S.D. 1999) (concluding insurer had a duty to defend an insured under a homeowners policy that excluded coverage for bodily injury "which is expected or intended by the insured," where the insured claimed she acted in self-defense during an alleged assault and battery); *Preferred Mut. Ins. Co. v. Thompson*, 491 N.E.2d 688, 691 (Ohio 1986) (concluding insurer had a duty defend an insured under a homeowners policy that excluded coverage for bodily injury "which is either expected or intended from the standpoint of the insured," where the insured claimed he was acting in self-defense when he shot the plaintiff in the underlying action); *Fire Ins. Exchange v. Berray*, 694 P.2d 191, 194 (Ariz. 1984) (concluding the insurer had a duty to defend an insured under a

homeowners policy that that defined an accident or occurrence, for which coverage was extended, as a sudden event resulting in bodily injury "*neither expected nor intended* by the insured," where the insured claimed he acted in self-defense during an altercation with the plaintiff in the underlying action) (italics in original).[4]

Applying similar reasoning here, it is reasonable to conclude that if Frank was acting in self-defense as he claims, a person in his position would not have reasonably intended or expected the consequences and harm resulting from his conduct. Accordingly, if Frank succeeds in establishing in the state court action that he acted in self-defense, the answer to both questions posed by the *Fisher Builders* test would be no, and the conduct alleged in the underlying complaint would constitute an occurrence under the coverage provisions of the Homeowners Policy.

### 2.   Whether the Intentional Acts Exclusion Applies

Even if the conduct alleged in the underlying complaint could potentially constitute an occurrence under the family liability coverage provisions, Allstate argues coverage is barred under the intentional acts exclusion.

---

[4] The Court acknowledges there is authority to the contrary from other jurisdictions. In *Farmers Automobile Ins. Assoc. v. Danner*, 967 N.E.2d 836 (Ill. App. 4th 2012), for example, the court found the insured's affirmative defense of self-defense was not relevant to whether insurer had a duty to defend under a policy that did not contain a self-defense exception to the intentional acts exclusion. Because this authority is not consistent with *Tunkle*, it is not persuasive.

Montana courts apply the same two-part test from *Fisher Builders* to determine whether coverage is precluded under an intentional acts exclusion like the one at issue here. *American Bankers Ins. Co. of Fla. v. Cameron*, 2021 WL 4170252, at *5 (D. Mont. Sept. 14, 2021). See also *Am. Reliable Ins. Co. v. Lockard*, 2018 WL 264962, at *3 (D. Mont. Jan. 2, 2018 ) (explaining that under *Fisher Builders*, "the 'Expected or Intended Injury' exclusion is not triggered if there is a possibility that the conduct had unintended and unexpected consequence to the victim); *Am. Reliable Ins. Co. v. Vlieland*, 2018 WL 1582551, at *5 (D. Mont. March 30, 2018) (same).

The intentional acts exclusion provides, in relevant part: "**We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of any **insured person.** This exclusion applies even if: … b) such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected …" (Doc. 8-1 at 43).

Although this exclusion precludes coverage for harm intended by, or which may reasonably be expected to result from the intentional acts of an insured, the Court has determined for the reasons outlined above that, if Frank prevails on his claim that he acted in self-defense, his conduct would not have been intentional and a reasonable person in his position would not have objectively intended or

28

expected his conduct to cause the harm alleged in the underlying complaint. Thus, Allstate has not met its burden of demonstrating that the underlying claims are unequivocally excluded under this exception to coverage.

### 3.   Whether the Business Activities Exclusion Applies

Allstate further asserts there can be no duty to defend because, to the extent Delgado alleges Frank was acting in his official capacity as a law enforcement officer, coverage is precluded under the business activities exclusion. Frank counters that business activities exclusion does not preclude coverage because the underlying complaint alleges that Frank acted in both his individual and professional capacities.

Delgado's complaint names Frank in his individual and official capacity, and asserts claims against him for negligence and negligence per se. (Doc. 8-3). As Allstate points out, the underlying complaint contains allegations that Frank was acting in his capacity as a law enforcement officer during the altercation with Delgado (Doc. 8-3, at ¶¶ 14, 16, 81). In addition, Delgado alleges negligence per se based on violations of Montana's official misconduct statute, Mont. Code Ann. § 45-7-401. (Doc. 8-3 at 59-68) This statute provides that "[a] public servant commits the offense of official misconduct when in an official capacity the public servant commits any" of several listed acts. Mont. Code Ann. § 45-7-401(1). (Doc. 8-3 at 59-68). To the extent the underlying complaint alleges negligence per se

based on violations of the official misconduct statute, the Court agrees with Allstate that the business activities exclusion precludes coverage. Likewise, to the extent Delgado seeks to hold Frank liable in his official capacity for negligence, and for negligence per se based on violations of Montana criminal statutes prohibiting unlawful restraint and criminal trespass, the business activities exclusion also precludes coverage.

As pled in the underlying complaint, Delgado also seeks to hold Frank liable for negligence in his individual capacity. Allstate relies on *State Farm Fire & Cas. Ins. Co. v. Chun*, 2007 WL 2026134 (D. Haw. July 6, 2007), for the proposition that a business activities exclusion may preclude coverage of individual capacity claims. In *Chun*, parents sued a school headmaster in his individual and official capacity, claiming their children were wrongfully dismissed from school. *Chun*, 2007 WL 2026134, at *2-3. The insured asked the court to consider matters outside the pleadings suggesting that the alleged conduct was unrelated to the insured's business duties. *Chun*, 2007 WL 2026134, at *8. The court declined to do so, and concluded that coverage was precluded under a business pursuits exclusion because, regardless of whether the claims were asserted against the defendant in his individual or official capacity, the conduct alleged in the underlying complaint clearly related to the insured's employment. *Chun*, 2007 WL 2026134, at *10. But here, unlike the underlying factual allegations in *Chun*, the factual allegations in

support of Delgado's common law negligence claim can easily be read as alleging conduct outside the course and scope of Frank's employment as a law enforcement officer. Thus, to the extent the underlying complaint asserts an individual capacity negligence claim against Frank, Allstate has not demonstrated that the business activities exclusion applies.

Having concluded based on the allegations in the underlying complaint that the business activities exclusion does not apply to Delgado's individual capacity claims, the Court need not address Frank's argument that the Court should look beyond those allegations and consider the effect of a letter from the City of Billings stating that Frank was not acting in the course and scope of his employment at the time of the events alleged in the underlying lawsuit.[5]

        4.    <u>Whether there is potential coverage for punitive, exemplary, or statutorily imposed penalties</u>

Finally, Allstate contends the Homeowners Policy does not provide coverage for certain remedies sought in Delgado's complaint, including particularly punitive or exemplary damages and statutorily imposed penalties. Under Montana law, "[i]nsurance coverage does not extend to punitive or exemplary damages unless expressly included by the contract of insurance." Mont.

---

[5] Although the letter is dated February 1, 2022, it not clear whether Allstate was made aware of letter before Frank submitted it as an exhibit in support of his pending motion for summary judgment. (Doc. 35-2).

Code Ann. § 33-15-317(1). Because the Homeowners Policy does not include insuring language covering punitive or exemplary damages, the statutory exclusion applies. Frank does not argue otherwise.

In addition to claiming negligence per se based on violations of the official misconduct statute, the underlying complaint accuses Frank of negligence per se based on violations Montana's criminal trespass to property statute, Mont. Code Ann. § 45-6-202 and unlawful restraint statute, Mont. Code Ann. § 45-5-301. (Doc. 8-3 at 79-98). Delgado alleges that Frank criminally trespassed into his vehicle, and unlawfully restrained him when he entered his vehicle. (Doc. 8-3 at ¶¶ 81, 90). Criminal trespass to property and unlawful restraint are both offenses for which statutory penalties or fines may be imposed. Mont. Code Ann. § 45-6-202(2); § 45-5-301(2). Allstate thus argues, and Frank does not dispute, that any fines or penalties ultimately awarded for violations of the unlawful restraint and criminal trespass to property statutes are excluded from coverage.

      5.   <u>Allstate has a duty to defend Frank under the Homeowners Policy</u>

Resolving all doubt about the meaning of the allegations in the underlying complaint in favor of finding a duty to defend, and reading those allegations in conjunction with Frank's self-defense claim, the Court concludes for the reasons outlined above that the conduct alleged in the underlying complaint constitutes an "occurrence" under the Homeowners Policy, and Allstate has not met its burden of

unequivocally demonstrating that the intentional acts exclusion precludes coverage. In addition, Allstate has not shown that the business activities exclusion precludes coverage to the extent the underlying complaint seeks to hold Frank liable in his individual capacity.  Accordingly, and because there is a potential for coverage if Frank prevails on his affirmative defense of self-defense, Allstate has a duty to defend him in the underlying action. See *Home Ins. Co. v. Pinski Bros., Inc.*, 500 P.2d 945, 949-50 (Mont. 1972) (If an insurer has a duty to defend one claim, it must defend against all claims even if there is no possibility that those remaining claims would be covered.)

**B.     Umbrella Policy**

The Umbrella Policy provides Excess Liability Insurance for Bodily Injury and Property Damage ("Coverage XL") and Excess Liability Insurance for Personal Injury ("Coverage XP"). (Doc. 8-2).

1.     <u>Coverage XL</u>

Section 1 of Coverage XL provides, in relevant part:

Under Section 1 of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damages** arising out of an **occurrence** that is both a loss **we** cover under **Excess Liability Insurance -Bodily Injury and Property Damage – Section 1** of this policy and a covered loss under **your** Required Underlying Insurance policy.

(Doc. 8-2 at 16). Section 1 of Coverage XL further states, in relevant part: "**We** will cover an **occurrence** arising only out of: 1. Personal activities of an **insured person**. …." (Doc. 8-2 at 16).

Like the Homeowners Policy, the Umbrella Policy defines "occurrence" as "an accident during the policy period, including continued and repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury**, **personal injury** or **property damage**." (Doc. 8-2 at 13).

It is undisputed that the Homeowners Policy served as the "Required Underlying Insurance Policy" for the Umbrella Policy. (Doc. 33 at 12 ¶ 30). Allstate contends the underlying claims are not covered under Section 1 of Coverage XL because there is no coverage under the Homeowners Policy. (Doc. 26 at 28). As discussed above, however, the claims alleged in the underlying complaint are potentially covered by the Homeowners Policy.  Accordingly, for the same reasons that Allstate has a duty to defend Frank under the Homeowners Policy, it has a duty to defend him under Section 1 of the Umbrella Policy's Coverage XL provisions.

Section 2 of Coverage XL provides, in relevant part:

Under Section 2 of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising only out of:

34

1.      a covered **occurrence** for which Required Underlying Insurance is not required by this policy; or

2.      a covered **occurrence** for which **you**  are required by this policy to maintain Required Underlying Insurance but there is no Required Underlying Insurance in effect at the time of the **occurrence**.

**We** will not pay any punitive or exemplary damages, fines and penalties.

(Doc. 8-2 at 17). By its terms, Section 2 does not apply because the parties have stipulated that the Homeowners Policy served as the Required Underlying Insurance, and was in effect at the time of the events giving rise to the Delgado's underlying lawsuit. But even if Section 2 did apply, it would require Allstate to provide a defense.

Unlike Section 1 of Coverage XL, which does not contain any exclusions, Section 2 of Coverage XL, which may apply to "a covered **occurrence** for which Required Underlying Insurance is not required by this policy," contains an exclusion for intentional or criminal acts that is substantively the same as the Homeowners Policy's intentional acts exclusion.  (Doc. 8-2 at 17, 18). Except for the underlying complaint's allegations of official misconduct, which Allstate agrees may be carried out negligently, Allstate argues this intentional acts exclusion precludes coverage for the underlying suit for the same reasons the Homeowners Policy's intentional acts exclusion precludes coverage. As explained above, however, Allstate has not met its burden of unequivocally demonstrating that the Homeowner Policy's intentional acts exclusion precludes coverage. For the

same reasons, Allstate has not unequivocally shown that the identical exclusion in

the Umbrella Policy precludes coverage.

2.      Coverage XP

The Umbrella Policy's Coverage XP provisions state:

Under **Excess Liability Insurance – Personal Injury, we** will pay damages
which an **insured person** becomes legal obligated to pay because of
**personal injury. Personal injury** must arise from a covered **occurrence**.

(Doc. 8-2 at 21). The Umbrella Policy defines personal injury as:

6.      **Personal injury** means harm resulting from:
  a)      false arrest; false imprisonment; wrongful detention;
  b)      wrongful entry; invasion of rights of occupancy;
  c)      libel; slander; humiliation; defamation of character; invasion of
          rights of privacy.

(Doc. 8-2 at 13). Coverage XP contains several exclusions, including a business

activities exclusion stating that this coverage does not apply "[t]o **personal injury**

arising out of any act or failure to act by any person in performing functions of that

person's **business**." (Doc. 8-2 at 21).

Allstate contends this this business activities exclusion precludes coverage

for Delgado's allegations of official misconduct and official capacity claims for the

same reasons the Homeowners Policy's business exclusion applies to those claims.

The Court agrees. To the extent the underlying complaint alleges negligence per se

based on violations of Montana's official misconduct statute and seeks to hold

Frank liable in his official capacity, the Umbrella Policy's Coverage XP business activities exclusion precludes coverage.

Coverage XP also contains separate exclusions for intentional and criminal acts. (Doc. 8-2 at 22). Like the intentional acts exclusion in the Homeowners Policy, the Umbrella Policy's intentional acts exclusion states that Coverage XP does not apply:

> To **personal injury** intended by, or which may reasonably be expected to result from the intentional acts or omissions of, any **insured person**. (Doc. 8-2 at 22). This exclusion applies even if:
> a)   such **insured person** lacks the mental capacity to govern his or her conduct;
> b)   such **personal injury** is of a different kind or degree than that intended or reasonably expected; or
> c)   such **personal injury** is sustained by a different person than intended or reasonably expected.

(Doc. 8-2 at 22). The Umbrella Policy's criminal acts exclusion similarly provides that Coverage XP does not apply "to **personal injury** arising out of, or which may reasonably be expected to result from, the criminal acts of any **insured person**. …" (Doc. 8-2 at 22).

Allstate maintains that Coverage XP's intentional and criminal acts exclusions bar coverage for the essentially same reason it argues the Homeowners Policy's intentional acts exclusion does, namely, that the nature of the conduct alleged in the underlying complaint cannot be carried out negligently or without knowing, purposeful intent. (Doc. 26 at 32). As explained above, however, if Frank

prevails on his affirmative defense that he acted in self-defense, his conduct would not have been intentional and a reasonable person in his position would not have objectively intended or expected his conduct to cause the harm alleged in the underlying complaint. Accordingly, Allstate has not met its burden of unequivocally demonstrating that the underlying claims are excluded under the Umbrella Policy's intentional and criminal acts exclusions.

Because there is a potential for coverage under the Umbrella Policy if Frank prevails on his affirmative defense of self-defense, Allstate has a duty to defend him in the underlying action.

## IV.   <u>Conclusion</u>

For the reasons discussed above, Allstate has a duty to defend Frank under the Policies. Allstate's duty to defend arose in August 2022, when it was first notified that Frank had asserted self-defense as an affirmative defense in the underlying action. The duty to indemnify cannot be determined until the underlying action is resolved. Accordingly,

IT IS ORDERED that Allstate's Motion for Summary Judgment (Doc. 25) is DENIED, and Frank's Cross-Motion for Partial Summary Judgment on the duty to defend (Doc. 31) is GRANTED.

IT IS FURTHER ORDERED that on or before February 16, 2024, the

parties file a status report advising the Court as to the status of the underlying state

court action.

DATED this 17th day of August, 2023.

_____
Kathleen L. DeSoto
United States Magistrate Judge